**MONSANTO COMPANY, Petitioner (Appellee/Defendant below),**

v.

**Arthur E. JARRELL and Juliann Jarrell, Respondents (Appellants/Plaintiffs below).**

Supreme Court of Indiana.

May 30, 1990.

Phillip R. Scaletta, Mary Jo Newborn, Ice Miller Donadio & Ryan, Indianapolis, for petitioner.

John Richard Walsh, II, Anderson, for respondent.

### ON PETITION TO TRANSFER

Petition for transfer denied (for opinion of Court of Appeals see, 528 N.E.2d 1158).

PIVARNIK, Justice, dissenting to the denial of transfer.

I must respectfully dissent from the majority's denial of transfer. This products liability case arises out of an industrial accident at the Firestone International Products Plant in Noblesville, Indiana. Plaintiff Arthur E. Jarrell was severely burned on October 19, 1981, when he emptied two fifty-pound bags of "Insoluble Sulphur 60," a product supplied to Firestone by Monsanto, through the upper hatch of a storage bin. The resulting sulphur dust cloud ignited, injuring Jarrell. Jarrell and his wife claim that Monsanto was negligent because it failed to warn him of the inherent dangers of sulphur. The trial court granted summary judgment in favor of Monsanto, based in part on the fact that the bags of sulphur did contain warnings but Jarrell failed to read them. The Court of Appeals reversed. *Jarrell v. Monsanto Co.* (1988), Ind.App., 528 N.E.2d 1158. I would grant transfer and affirm the trial court's ruling.

Monsanto labelled the bags of sulphur as follows:

WARNING! ...

SULPHUR DUST SUSPENDED IN AIR IGNITES EASILY! ...

Avoid creating dust in handling.

In addition, Monsanto mailed "material safety data" to Firestone approximately ten months before this accident. This data contained the same and additional warnings regarding the inherent dangers of sulphur. Jarrell failed to read the warning labels on the bags of sulphur prior to emptying them, even though he was aware of warning labels on the bags of various products that he had previously used in the scope of his employment.

Jarrell claims that Monsanto was negligent because it failed to warn him of the dangerous propensities of sulphur and that it should be "strictly liable" for selling a product which was defective and unreasonably dangerous.

Regarding Jarrell's negligence claim, Monsanto owed its duty to Firestone. Monsanto discharged this legal obligation when it provided "material safety data" to Firestone and printed warnings directly on the bags of sulphur, so that workers who handled the material would be apprised of its dangers. It was incumbent upon Firestone to keep the original warning labels intact and otherwise make the "material safety data" available to its employees. (This is now a federal requirement, *see* 29 C.F.R. § 1910.1200. *See also Dole v. United Steelworkers of America* (1990), 494 U.S. ——, ——, 110 S.Ct. 929, 931, 108 L.Ed.2d 23, 29.) By mailing "material safety data" to Firestone and printing warning labels on the bags of sulphur, Monsanto did all that it was legally required to do.

Jarrell did not read the warnings on the bags of sulphur which ignited and caused him injury, claiming: (1) the bags of sulphur were covered with dust and the printed warnings were therefore hidden, and (2) the printed warnings were not conspicuous enough to attract his attention. First, it was incumbent upon Jarrell to clear away the film of dust and read the printed warnings on the bags. The Court of Appeals' suggestion that the warnings were inadequate in light of the environment is unper-

suasive; there is nothing Monsanto could have done to alleviate this problem. Second, whether the warning labels were sufficient to "catch" Jarrell's attention is not relevant because he already was aware of sulphur's combustible nature. In fact, on the very morning of the accident, Jarrell had read a similar warning on another sulphur product. Clearly, the danger was not concealed from him.

Jarrell next contends that even if he did read the warnings, the jury should have been allowed to determine that it would not have made any difference because the warnings inadequately informed the reader of the proscribed danger. This argument hardly merits comment. Clearly, Jarrell does not have standing to challenge the way the warnings were worded because he never read those warnings in the first instance.

This industrial accident was not the result of Monsanto's negligence.

With regard to Jarrell's "strict liability" claim, the sulphur sold here was not "in a defective condition unreasonably dangerous to any user or consumer." IC 33–1–1.-5–3(a). The sulphur was sold to Firestone for industrial use in its plant. Firestone had purchased sulphur for many years prior to this accident and, presumably, will continue to buy sulphur in years to come. It knew of sulphur's inherent dangers. Indeed, Monsanto mailed "material safety data" to Firestone. The bags of sulphur at issue here had warnings printed on them, informing the handler of certain hazards. The sulphur supplied by Monsanto was neither defective nor unreasonably dangerous.

Jarrell had handled sulphur in the past and knew about its hazardous qualities. He was not the ordinary consumer who buys a defective product and is injured by it. Jarrell had worked with sulphur and other hazardous materials for a number of years at Firestone and was well aware of its combustible nature. Nevertheless, he dumped two fifty-pound bags of sulphur from a height of approximately ten feet, creating a sufficient dust cloud of sulphur particles which eventually ignited, causing him to suffer severe burns. This industrial accident, tragic as it was, was not caused by a defective or unreasonably dangerous product manufactured by Monsanto.

I respectfully dissent to the denial of transfer.

GIVAN, J., concurs.